IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DAVID LEE LEGGS #370410, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cv-01059 |
| | ) | |
| BRUCE WESTBROOKS, Warden | ) | Judge Campbell |
| | ) | |
| Respondent. | ) | |

<u>**MEMORANDUM OPINION**</u>

Petitioner David Lee Leggs, a prisoner in state custody, has filed a *pro se* petition under 28 U.S.C. § 2254 for a writ of *habeas corpus.* (ECF No. 1.) Respondent has answered in opposition to the petition (ECF No. 36), and has filed a copy of the underlying state-court record. (ECF Nos. 28, 30, 33.) The petition is ripe for review. For the reasons set forth herein, petition will be **DENIED** and this action **DISMISSED** with prejudice.

**I. PROCEDURAL BACKGROUND**

A Davidson County grand jury indicted Petitioner on four counts of aggravated robbery, one count of attempted first degree murder, one count of possession of a firearm during the commission of a dangerous felony and one count of being a felon in possession of a firearm. (ECF No. 28-1, at 4–10.) A jury convicted Petitioner of three counts of aggravated robbery, acquitted him of one count of aggravated robbery, and were unable to reach a verdict on the remaining counts, which were later dismissed. (ECF No. 28-1, at 27–31.) The trial court sentenced him to 25 years at 100% for each of the three aggravated robbery convictions, with one count to be served consecutively to the other two, for a total effective sentence of 50 years. (ECF No. 28-1, at 29–31.) The Tennessee Court of Criminal Appeals affirmed on direct appeal, and the Tennessee Supreme Court denied review. *State v. Leggs*, No. M2012-00136-CCA-R3-CD, 2012 WL 6097274 (Tenn. Ct. Crim. App. Dec. 7, 2012), *perm. app. denied* (Tenn. March 30, 2013). The sole issue raised on direct appeal

was whether it was error to order consecutive sentencing. *Id.*, 2012 WL 6097274, at *1.

Petitioner brought a *pro se* post-conviction action in state court, followed by appointment of counsel and the filing of an amended petition. (ECF No. 30-1, at 24–42.) After an evidentiary hearing, the post-conviction trial court denied relief. (ECF No. 30-1, at 46–61). The Tennessee Court of Criminal Appeals affirmed the denial of relief, and the Tennessee Supreme Court again denied review. *Leggs v. State*, No. M2014-00866-CCA-R3-PC, 2015 WL 333419 (Tenn. Ct. Crim. App. Jan. 27, 2015), *perm. app. denied* (Tenn. May 14, 2015) (ECF No. 28-22).

Petitioner has submitted a *pro se* petition in the current action, and its timeliness is not in question.

## II.   STATEMENT OF FACTS

The Tennessee Court of Criminal Appeals summarized the facts and testimony presented during trial as follows:[1]

> The defendant's convictions arose from his August 13, 2010 armed robbery of Jang Choi, Dae Choi, and Rosminda Escalante, who were, respectively, the owner, owner's son, and employee of the Korea House, a Korean Restaurant located on Charlotte Pike in West Nashville. According to the State's proof at trial, the three victims were carrying trash to the dumpsters behind the restaurant at approximately 11:00 p.m. when the defendant came from behind the dumpsters, pointed a handgun at them, ordered them to the ground, and demanded that they give him their possessions. After taking Jang Choi's wallet and cash, Dae Choi's wallet, cash, and cell phone, and Escalante's cell phone, the defendant demanded the rest of the money and began trying to force Jang Choi inside the restaurant with him. The defendant gave up the attempt and fled on foot when Jang Choi's wife peeked out of the restaurant, saw what was happening, and quickly shut the restaurant door.
>
> When the defendant fled the scene, Dae Choi ran to his vehicle, got inside, and began chasing him. He stopped when the defendant fired at him but resumed the chase after the defendant stopped shooting and continued his flight. The defendant, however, once again stopped and pointed his weapon at Dae Choi, which caused Dae Choi to strike a wall with his vehicle. At that point, the defendant advanced to within eight feet of the driver's door of Dae Choi's stopped vehicle and fired multiple gunshots at him, in the process putting four bullet holes in the vehicle and shattering the back windshield. Afterwards, the defendant fired a final gunshot at Jang Choi, who had followed on foot behind his son's vehicle, before once again resuming his

---

[1] The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

flight. The defendant was captured a short time later after the police tracked his location through the GPS locator on Dae Choi's cell phone. A black semiautomatic .32 caliber pistol was recovered from underneath the driver's seat of the vehicle from which the defendant was exiting at the time he was apprehended.

The defendant's presentence report, which reflected an extensive criminal history, was admitted as an exhibit to the sentencing hearing. After the parties agreed that the defendant was a Range III, persistent offender and would be required to serve the sentences for his convictions at 100 percent due to his prior aggravated robbery convictions, the State put on evidence of other aggravated robberies for which the defendant was pending trial.

The State's first witness was Kwan Kong, the victim of an August 8, 2010 armed robbery at the New China Restaurant in Nashville. Kong testified that he was closing the door of the restaurant at approximately 10:00 p.m. on Saturday night when a man approached, asked him about two of his coworkers, brought out a gun, and took from him a bag containing approximately $400 to $600. Kong positively identified the defendant as the perpetrator from a photographic lineup he was shown by the police, and he made an unequivocal identification of the defendant at the hearing.

Nen Guang Chen, the victim of an August 10, 2010 armed robbery at the China Wok restaurant in Nashville, testified that she, her brother, and another employee were in the restaurant at about 9:00 p .m. when a man came inside, asked the price of the chicken wings, pulled out a gun, and robbed them of approximately $800. Chen said that the gunman first pointed his gun at her fellow employee, a young man who was working at the front of the restaurant. During the robbery, Chen's brother came from the back of the restaurant, saw the gunman, turned to flee, and was shot at by the gunman. Chen positively identified the defendant as the perpetrator from a photographic lineup she was shown by the police shortly after the robbery, but she was unable to make a positive identification of the defendant at the hearing.

Detective Stephen Jolley of the Metro Nashville Police Department, who investigated the China Wok robbery, testified that he learned there were four victims in the case: two employees who were in the front of the restaurant when the gunman entered, the restaurant's owner, who came from the back of the restaurant during the robbery and was shot at by the gunman, and a teenaged delivery driver who returned to the restaurant during the robbery to have the gunman point his gun at him and order him out of the restaurant. Detective Jolley stated that all four victims positively identified the defendant as the perpetrator from separate photographic lineups. In addition, a shell casing recovered from the scene conclusively matched the gun that was recovered with the defendant at the time of his arrest.

Katherine Lentile, the victim of an August 8, 2010 armed robbery in the parking lot of the Midtown Cafe in Nashville, testified that she and a friend, Kate Smythe, were getting into the passenger side of their vehicle at approximately 12:00 a.m. when a female, who "held her hand like a gun" pushed her into the vehicle and ordered her to give her everything she had. Moments later, a man who was holding an actual gun appeared, and she and her friend gave him their belongings. A third friend, who had been getting into the driver's seat of the vehicle, ran to a gas station and called the police. Lentile stated that both she and Smythe later identified the defendant as the gunman from separate photographic lineups they were shown by the police.

Lentile also made a positive courtroom identification of the defendant as the perpetrator.

Detective Patrick McLaughlin of the Metro Nashville Police Department, who investigated the August 8 Midtown Cafe robbery as well as another armed robbery that occurred in the parking lot of a Nashville Krystal Restaurant on August 10, 2010, testified that both Lentile and Smythe positively identified the defendant as the gunman from photographic lineups that he showed each of them at separate times. He further testified that the two victims of the Krystal robbery, Reginald Cunningham and McKendry Baynham, each positively identified the defendant as the perpetrator in their case. In addition, an unfired .32 caliber cartridge found at the scene of the Krystal robbery was matched to the gun recovered from the defendant at the time of his arrest.

Juan Cruz, the victim of an August 7, 2010 armed robbery at the Super Wok Restaurant in Nashville, testified that he worked as a delivery driver and was walking out the back door of the restaurant at approximately 11:00 p.m. when he was met by the defendant, who showed him his pistol and took the money he had in a bag, which was approximately $250 to $300. Afterwards, the defendant forced him back inside the restaurant, where the defendant robbed another employee, Ms. Lou, of approximately $250 to $300. Cruz identified the defendant as the perpetrator from a photographic lineup he was shown by the police, and he made a positive courtroom identification of him at the hearing.

The final witness was Emily Menke, a victim witness advocate with the district attorney's office, who translated into English a victim impact statement written by Esclante, who described the constant fear in which she had lived since the robbery and expressed her desire that the defendant be appropriately punished so that he would not be able to hurt other individuals.

At the conclusion of the hearing, the trial court applied as enhancement factors the defendant's previous history of criminal convictions and criminal behavior in addition to those necessary to establish his range and the defendant's failure to comply with the conditions of a sentence involving release into the community. *See* Tenn. Code Ann. § 40-35-114(1), (8) (2010). Finding no mitigating factors, the court sentenced the defendant as a Range III, persistent offender to twenty-five years for each offense, which was five years beyond the minimum sentence in his range. *See id.* § 40-35-112(c)(2). With respect to consecutive sentencing, the court found that the defendant qualified as an offender whose record of criminal activity was extensive but that the factor that "just jump[ed] out" was that he was a dangerous offender whose behavior exhibited little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. *See id.* § 40-35-115(b)(2), (4). The court, therefore, ordered that the defendant serve one of his twenty-five-year sentences consecutively to the other two concurrent sentences, for a total effective sentence of fifty years at 100 percent. In so doing, the court specifically found that the aggregate fifty-year sentence was reasonably related to the severity of the crimes, which the court characterized as "tremendously horrible," and were necessary to protect the public from further serious criminal conduct by the defendant.

*State v. Leggs*, No. M2012-00136-CCA-R3-CD, 2012 WL 6097274, at *1-3 (Tenn. Ct. Crim. App. Dec. 7, 2012).

## III. ISSUES PRESENTED FOR REVIEW

In his petition (ECF No. 1), Petitioner responds "N/A" in response to three out of four prompts to assert his grounds for relief, asserting only that the state suppressed favorable evidence as Ground Two. (ECF No. 1, at 7.) He does, however, attach several pages of handwritten "Attachment Sheet(s)" raising various issues about his case, which Respondent has helpfully organized into a list of formal grounds in his Answer. (ECF No. 36, at 10.) Petitioner has not contested Respondent's characterization of his claims, which appears to fairly summarize the issues raised in the Petition. Accordingly, the Court adopts the Respondent's structure and considers Petitioner's claims to be:

1. Petitioner received the ineffective assistance of counsel at trial.
2. Petitioner received the ineffective assistance of counsel on direct appeal.
3. Petitioner's sentence violates the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2006).
4. The prosecution failed to disclose all materials required by *Brady v. Maryland*, 373 U.S. 83 (1963).
5. The evidence was legally insufficient to support Petitioner's convictions for aggravated robbery.

## IV. STANDARD OF REVIEW

### A. AEDPA Review on the Merits

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S .C. § 2254(a). Upon finding a constitutional error on habeas corpus review, a federal court may only grant relief if it finds that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Peterson v. Warren*, 311 F. App'x 798, 803-04 (6th Cir. 2009).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . and 'to further the principles of comity, finality, and federalism.'" *Woodford*, 538 U.S. at 206 (quoting *Williams v. Taylor*, 529 U.S. 362, 436 (2000)). The requirements of AEDPA "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007) (citations omitted). As the Supreme Court has explained, AEDPA's requirements reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). Where state courts have ruled on a claim, AEDPA imposes "a substantially higher threshold" for obtaining relief than a *de novo* review of whether the state court's determination was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

Specifically, a federal court may not grant habeas relief on a claim rejected on the merits in state court unless the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (d)(2). A state court's legal decision is "contrary to" clearly established federal law under § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable application" occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A state court decision is not unreasonable under this standard simply because the federal court concludes that the decision is erroneous or incorrect. *Id.* at 411. Rather, the federal court must determine that the

state court's decision applies federal law in an objectively unreasonable manner. *Id.* at 410-12.

Similarly, a district court on habeas review may not find a state court factual determination to be unreasonable under § 2254(d)(2) simply because it disagrees with the determination; rather, the determination must be "'objectively unreasonable' in light of the evidence presented in the state court proceedings." *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007) (quoting § 2254(d)(2) and (e)(1)); *but see McMullan v. Booker*, 761 F.3d 662, 670 and n.3 (6th Cir. 2014) (observing that the Supreme Court has not clarified the relationship between (d)(2) and (e)(1) and the panel did not read *Matthews* to take a clear position on a circuit split about whether clear and convincing rebutting evidence is required for a petitioner to survive (d)(2)). Moreover, under § 2254(d)(2), "it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

Thus the standard set forth in 28 U.S.C. § 2254(d) for granting relief on a claim rejected on the merits by a state court "is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington*, 562 U.S. at 102, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). The petitioner carries the burden of proof. *Pinholster*, 563 U.S. at 181.

By its express terms, Section 2254(d)'s constrained standard of review only applies to claims that were "adjudicated on the merits" in the state court proceeding, including instances where the state court rules against the petitioner in a summary opinion that rejects all claims without

discussion, or an opinion that addresses some claims but does not expressly address all the federal claims presented. *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013); *Harrington v. Richter*, 562 U.S. at 98-99; *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004). Where a claim has not been adjudicated on the merits in state court but is still subject to federal review despite the bars of exhaustion and default, "federal habeas review is not subject to the deferential standard that applies under AEDPA. . . . Instead, the claim is reviewed de novo." *Moritz v. Lafler*, 525 F. App'x 277, 282 (6th Cir. 2013) (quoting *Cone v. Bell*, 556 U.S. 449, 472 (2009)); *accord Bies v. Sheldon*, 775 F.3d 386, 395-96 (6th Cir. 2014) ("Because Bies' Brady claim was never 'adjudicated on the merits in State court proceedings,' the limitations imposed by § 2254(d) do not apply, and we review the claim de novo.").

B.     **Exhaustion and Procedural Default**

1.     ***Exhaustion***

28 U.S.C. §§ 2254(b) and (c) provide that a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has presented the same claim sought to be redressed in a federal habeas court to the state courts. *Cullen v. Pinholster*, 563 U.S. at 182. The petitioner must "fairly present"[2] each claim at all levels of state court review, up to and including the state's highest court on discretionary review, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004), except where the state has explicitly disavowed state supreme court review as an available state remedy. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999). Tennessee Supreme Court Rule 39 eliminated the need to seek review in that court in order to "be deemed to have exhausted all available state remedies." *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003), *cert. denied*, 541 U.S. 956 (2004); *see also Smith v. Morgan*, 371 F. App'x 575, 579 (6th Cir. 2010) ("*Adams* not only requires the federal courts to ensure that the state courts have the first

---

[2]For a claim to be exhausted, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (internal citation omitted). Nor is it enough to make a general appeal to a broad constitutional guarantee. *Gray v. Netherland*, 518 U.S. 152, 163 (1996).

opportunity to review and evaluate legal claims ... but also mandates that the federal courts respect the duly-promulgated rule of the Tennessee Supreme Court that recognizes the law and policy-making function of that court and the court's desire not to be entangled in the business of simple error correction").

This rule has been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S. 509 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270 (1971); *see also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review"). Moreover, the substance of the claim must have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim. *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009). For the claim to be exhausted, it must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984). Specifically, in determining whether a petitioner "fairly presented" a federal constitutional claim to the state courts, federal courts should consider whether the petitioner: (1) phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) relied upon federal cases employing the constitutional analysis in question; 3) relied upon state cases employing the federal constitutional analysis in question; or (4) alleged "facts well within the mainstream of [the pertinent] constitutional law." *Hicks v. Straub*, 377 F.3d 538, 553 (6th Cir. 2004) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Moreover, the claim must be presented to the state courts under the same legal theory in which it is later presented in federal court. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). It cannot rest on a legal theory that is separate and distinct from the one previously considered and rejected in state court. *Id.* This does

not mean that the applicant must recite "chapter and verse" of constitutional law, but the applicant is required to make a specific showing of the alleged claim. *Wagner*, 581 F.3d at 414.

## 2. *Procedural Default*

The procedural default doctrine is ancillary to the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 81-82 (1977); *see also Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment"); *Coleman v. Thompson*, 501 U.S. 722 (1991) (same). If a claim has never been presented to the state courts, but a state court remedy is no longer available (e.g., when an applicable statute of limitations bars a claim), then the claim is technically exhausted, but procedurally barred. *Coleman*, 501 U.S. at 731-32; *see also Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004) (the procedural default doctrine prevents circumvention of the exhaustion doctrine).

If a claim is procedurally defaulted, "federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The burden of showing cause and prejudice to excuse defaulted claims is on the habeas petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 754).

A petitioner can establish cause in two ways. First, a petitioner may "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Coleman*, 501 U.S. at 753;

*Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003). Objective impediments include an unavailable claim or interference by officials that made compliance impracticable. *Murray*, 477 U.S. at 488. Second, constitutionally ineffective assistance of counsel may constitute cause under certain circumstances. *Murray*, 477 U.S. at 488-89; *Broom v. Mitchell*, 441 F.3d 392, 401 (6th Cir. 2006); *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (citing *Murray*, 477 U.S. at 495-96); *accord Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

## V. ANALYSIS AND DISCUSSION

### A. Claim 1: Ineffective Assistance of Trial Counsel

Petitioner asserts that his trial counsel was ineffective for failing to (a) move to suppress witness identification of him as the perpetrator; (b) move to suppress evidence seized pursuant to an illegal arrest in violation of the Fourth Amendment; (c) move to suppress Petitioner's statement to police as involuntary based on his intoxication; (d) request exculpatory evidence from the prosecution; and (e) conduct an independent investigation to locate *Brady* and *Jencks* material. (ECF No. 1, at 19–20.)

Petitioner exhausted sub-claim 1(a) on post-conviction. It is significant to this claim that Petitioner testified at his trial that he went to the Korea House restaurant on the night of the crime, and that he had an argument with the owner. (ECF No. 28-5, at 33–34.) He left the restaurant, but was so "steamed" over the argument that he went back with a friend after the restaurant was closed and went to the back of the building where he saw the three "victims" taking out the trash. (ECF No. 28-5, at 34–35.) Without any conversation, Petitioner approached the restaurant owner and struck him in the face with the intention to "get what he had on him." (ECF No. 28-5, at 36–37.) Petitioner

testified that after he struck the owner, who fell to the ground, Petitioner's friend pulled out a gun. (ECF No. 28-5, at 37.) After the friend ordered all the victims to lie down, Petitioner reached in the owner's pocket and took his wallet and cash, then took property and cash from the two other victims and "struck out running . . . fleeing the scene." (ECF No. 28-5, at 38–40.) Petitioner denied that he personally had the gun. (ECF No. 28-5, at 40.) At the post-conviction hearing, Petitioner testified that the testimony he gave at trial was truthful, and acknowledged that he had admitted to being "there with the person who robbed them." (ECF No. 28-17, at 17, 22.)

The post-conviction trial court concluded that Petitioner did not establish ineffectiveness or prejudice with regard to counsel's not attempting to suppress the victim's identification of him because "Petitioner was unable to articulate any legal basis for counsel to file a motion to suppress identification, particularly in light of Petitioner admitting to his presence and that he hit the victim before running off." (ECF No. 30-1, at 59–60.) The Tennessee Court of Criminal appeals affirmed:

> Both the Sixth Amendment to the Constitution of the United States and Article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *Burns*, 6 S.W.3d at 461. In order to receive post-conviction relief based on a claim of ineffective assistance of counsel, a petitioner must show that trial counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580.
>
> To establish deficient performance, a petitioner must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. Counsel's performance is considered reasonable "if the advice given or the services rendered [were] within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). This Court "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. A petitioner is not entitled to the benefit of hindsight to second-guess a reasonably based trial strategy or a sound, but unsuccessful, tactical decision. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S.

at 694).

. . .

Regarding trial counsel's failure to file pre-trial motions as requested by Petitioner, the post-conviction court credited trial counsel's testimony that "there was no legal basis to file any pre-trial motions other than the motion to suppress statement that he filed." We conclude that this issue is also without merit. Petitioner could not articulate any reason or legal basis to suppress the testimonies of the victims who positively identified him or the testimony of any victim who could not. Any disagreement with the testimony of the victims was a matter to be pursued on cross-examination or closing argument, not by pre-trial motion. Additionally, there was no photo lineup that could have been challenged as unfairly suggestive. Moreover, as indicated by trial counsel, there was considerable circumstantial evidence and Defendant's own testimony that proved that Petitioner was, in fact, present during and involved in the commission of the crimes for which he was convicted. Trial counsel's conduct was not deficient by refusing Petitioner's request to file a baseless motion.

*Leggs v. State*, No. M2014-00866-CCA-R3-PC, 2015 WL 333419, at **5, 6 (Tenn. Ct. Crim. App. Jan. 27, 2015).

In light of Petitioner's own testimony establishing that he was present for and participated in the robbery, the validity of his identification was simply not an issue in his case. The state court identified the proper federal standard, determined that counsel's decision not to contest identification was neither deficient nor prejudicial, and therefore rejected Petitioner's claim for ineffective assistance. That conclusion was neither contrary to, nor an unreasonable application of clearly established federal law.

The remainder of Claim 1 is procedurally defaulted. The only ineffective-assistance-of-trial-counsel claims that Petitioner pursued on appeal from the denial of post-conviction relief, other than the identification issue just addressed, related to: (1) a "near-physical altercation" between Petitioner and counsel; (2) counsel's failure to seek a bond reduction; and (3) counsel's failure to adequately advise Petitioner concerning the decision to testify at trial. (ECF No. 28-20); *Leggs*, 2015 WL 333419, at *4. Because Petitioner did not present sub-claims 1(b) through 1(e) to the highest state court available to him, and has not offered any explanation for his failure to do so, those sub-claims are defaulted and not subject to federal habeas review.

B.       Claim 2: Ineffective Assistance of Appellate Counsel

Petitioner asserts that counsel was ineffective for failing to preserve on direct appeal his claim that the trial court should have suppressed his statement to police as involuntary due to his intoxication. (ECF No. 1, at 20.) Specifically, he claims that "Defense counsel failed to request a suppression hearing based on intoxication, failed to raise this issue prior to or after trial, and failed to preserve the issues on appeal." (*Id.*) Respondent asserts, and the Tennessee Court of Criminal Appeals concluded, that this claim was waived on post-conviction because it was not presented to the post-conviction trial court but was raised for the first time on appeal. (ECF No. 36, at 17); *Leggs*, 2015 WL 333419, at *4 (applying doctrine that "issues are generally waived unless they were raised in or presented to the trial court"). In that case, the present claim would be procedurally defaulted. It appears to this Court, however, that Petitioner did present this exact claim in his original *pro se* post-conviction petition: "Defense counsel failed to request a suppression hearing based on intoxication, failed to raise this issue prior to or after trial, and failed to preserve the issues on appeal." (ECF No. 30-1, at 34.)

Nevertheless, regardless of whether this claim should be deemed procedurally defaulted, it is without merit. As the state court found on post-conviction, Petitioner's claim that trial counsel was ineffective for not moving to suppress his statement was unfounded because counsel had, in fact, filed such a motion and represented Petitioner at the suppression hearing. (ECF No. 30-1, at 59); *Leggs*, 2015 WL 333419, at **2, 6. Accordingly, to the extent his present claim might be construed to assert that counsel was ineffective on direct appeal for failing to raise a claim that trial counsel had ineffectively failed to file a motion to suppress, there was no factual basis for such an appellate issue.

The present claim may be that counsel was ineffective on direct appeal for failing to assert that the trial court erred in denying his motion to suppress. This claim fails because, even assuming that appellate counsel's failure to raise the claim constituted deficient performance, Petitioner has not established that the failure had any impact on the outcome of his appeal.

*Strickland*, 466 U.S. 668, 694 (1984) (holding that prejudice requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

At the suppression hearing held during trial, Petitioner testified that around 9 or 10 p.m., before giving his statement to police, he had consumed four 24-oz bottles of beer, along with an unspecified amount of ecstasy and Xanax. (ECF No. 28-4, at 5–6.)  He testified that he gave his statement at 2:10 a.m., after several hours in custody, during which he had not consumed any alcohol or drugs. (ECF No. 28-4, at 14.)  Petitioner acknowledged that although he told the officers interviewing him about the beers, he did not mention having taken the drugs. (ECF No. 28-4, at 9.)  He stated repeatedly during his testimony that "I know how to hold my liquor." (ECF No. 28-4, at 13.)  He also acknowledged that he refused to answer several of the questions the officers asked about other alleged participants in the crime. (ECF No. 28-4, at 12–13.)  The detective who questioned Petitioner testified that at the time of the interview Petitioner engaged in conversation normally and appeared to be "of right mind," and that the detective did not smell any intoxicant. (ECF No. 28-4, at 17–18.)  There was nothing about Petitioner's behavior or appearance that indicated to the detective that Petitioner was under the influence of an intoxicant. (ECF No. 28-4, at 18.)  The detective testified that he had been a police officer for nine years and had made arrests for driving under the influence. (ECF No. 28-4, at 21–22.)  He stated that Petitioner's behavior was not consistent with that of someone who was intoxicated, and that in his opinion Petitioner was not intoxicated at the time of the interview. (ECF No. 28-4, at 22, 23–24.)  The trial judge listened to a recording of the interview and denied the motion to suppress:

> All right, so the tape has been listened to, let's go over this for the motion suppress, and similar to the argument that I heard yesterday, Mr. Leggs is coherent.  He does talk about drinking, but his speech is not slurred.  The detective even mentions that he doesn't smell anything, so he's about to give a narrative.  And there is some discussion about the fact that he has drank [sic] and that he drank before he went over to the location, but he's able to say this, he refuses to give names; he refuses to say his girlfriend picked him up, all that is the police are not overcoming his will in any way, so I'm going to deny your motion to suppress . . ..

(ECF No. 28-5, at 4.)

This Court has listened to the recorded statement (see ECF No. 33) and agrees with the trial court's assessment. After initially having to be roused at around 2 a.m. for the interview, Petitioner was coherent, rational and responsive throughout. He was calm and civil, but affirmatively disagreed with the officers at several points, and repeatedly refused to identify any other individuals who were allegedly involved in or facilitated the robbery. This indicates that he was thinking clearly, and that his will was not overborne by the circumstances. Also, while Petitioner stated that he "was drunk," he said he was only "still buzzed" at the time of the interview. Where a suspect "had been drinking heavily" on the day of a crime, but did not appear to be too intoxicated to talk to police, was advised of his rights and signed a written waiver, and "capably narrated the events of the evening and responsively answered [the officer's] questions," the Tennessee Court of Criminal Appeals has found no error in a trial court's denial of a motion to suppress. *State v. Edens*, No. 87-297-III, 1988 WL 63524, at *3 (Tenn. Ct. Crim. App. June 24, 1988). On the facts of Petitioner's case, there is not a reasonable likelihood that the appellate court would have reversed on this issue even if it had been raised on appeal. This claim is without merit.

### C. Claim 3: Unconstitutional Sentencing

Petitioner claims that his sentence is "illegal because it was enhanced based on factors not found [by the jury] or admitted by the petitioner in violation of *Blakely v. Washington*, 542 U.S. 296 . . . (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 . . . (2000)." (ECF No. 1, at 16.) Respondent correctly asserts that Petitioner has never raised this claim in state court. Petitioner's only challenge to his sentence on direct appeal was that the imposition of consecutive sentences violated the Tennessee Criminal Sentencing Reform Act of 1989. (ECF No. 28-11.) His brief did not raise any issue of federal constitutional law, and did not cite the federal constitution or any cases construing it, including *Blakely* or *Apprendi*. (*Id.*) Accordingly, the state Court of Criminal Appeals addressed and disposed of his claim solely as a matter of state law. *State v. Leggs*, No.

M2012-00136-CCA-R3-CD, 2012 WL 6097274, at *4 (Tenn. Ct. Crim. App. Dec. 7, 2012).

Because the Petitioner did not present his sentencing claim to the state court as a federal constitutional issue, he has not exhausted this claim. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984). The claim is now procedurally barred from review in state court under Tenn. Code Ann. § 40-30-102, and is therefore procedurally defaulted for the purpose of federal habeas review.

### D.    Claim 4: Brady Violation

Petitioner asserts that the state concealed exculpatory evidence in his case, "[f]or example, the State failed to disclose in discovery arrest warrants, Petitioner's co-defendant's statements, Petitioner's actual charges and several other items of exculpatory evidence that would have established Petitioner's actual involvement." (ECF No. 1, at 19.) He claims that this constitutes a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (ECF No. 1, at 17.)

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. The Supreme Court has articulated three components of a *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Although Respondent asserts that this claim is procedurally defaulted, suppression of evidence that prevents a petitioner from raising claims arising from that evidence in state court can establish cause for the default of those claims. *Hutchison v. Bell*, 303 F.3d 720, 741 (6th Cir. 2002); *Smith v. Bell*, 381 F. App'x. 547, 552 (6th Cir. 2010), *vacated on other grounds sub nom. Smith v. Colson*, 132 S. Ct. 1790 (2012)). Because "the requirements for showing cause and prejudice parallel the elements of the underlying *Brady* violation," *Hutchison*, 303 F.3d at 741, if Petitioner is able to establish a *Brady* violation, he necessarily overcomes the procedural default bar. *Bies v.*

*Sheldon*, 775 F.3d 386, 396 (6th Cir. 2014) (explaining that cause and prejudice parallel two components of a *Brady* claim "with the suppression of the evidence constituting cause and the materiality of the evidence resulting in prejudice").  Respondent's position is, therefore, not well-taken.

Nevertheless, Petitioner has not alleged sufficient facts to make out a *prima facie Brady* claim.  Petitioner does not attach the allegedly exculpatory material to his pleading, and his one-sentence list of "example[s]" of allegedly withheld evidence does not include any description of the contents of the listed documents or of how they were favorable or material or might have changed the outcome of his trial. (ECF No. 1, at 19.)  Without those facts, Petitioner's bare-bones recitation of the standard for a *Brady* violation does not state a claim for relief.  This claim is without merit.

### E.    Claim  5: Insufficient Evidence

Petitioner appears to raise the "legal sufficiency of evidence" or "lack of convicting proof" as an issue in this action. (ECF No. 1, at 18, 19.)  Based on the Court's review of the record, it does not appear that Petitioner ever directly challenged the sufficiency of the evidence in state court. In his appeal from denial of relief on post-conviction, Petitioner asserted that his counsel on appeal had been ineffective for *failing* to raise "sufficiency," arguing that "[a]t a minimum the Appellant was entitled to have the sufficiency of the evidence reviewed in his case, but he was denied that entitlement." (ECF No. 28-20, at 12.)  The Tennessee Court of Criminal Appeals found that issue waived because it had not been presented below, *Leggs v. State*, 2015 WL 333419, at *4, so even that issue would be procedurally defaulted.  Moreover, as Respondent correctly argues, preserving a claim for ineffective assistance for failure to raise an underlying claim would not preserve the underlying claim itself. *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008).  Petitioner's insufficiency-of-the-evidence claim is therefore defaulted and not subject to habeas review.[3]

### VI.    CONCLUSION

_____

[3]Alternatively, it is clear that this claim would fail on its merits even if it were preserved.  Petitioner's own trial testimony, as summarized in Part A above, in addition to the other evidence recited by the state court, sufficiently established Petitioner's complicity in the crimes for which he was convicted.

For the reasons set forth herein, the petition will be **DENIED** and this action will be **DISMISSED** with prejudice.

The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Gov'g § 2254 Cases.  The petitioner may not take an appeal unless a district or circuit judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the COA must "indicate which specific issue or issues satisfy the [required] showing . . . ." 28 U.S.C. § 2253(c)(3).  A "substantial showing" is made when the petitioner demonstrates that "'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  "[A] COA does not require a showing that the appeal will succeed." *Miller-El*, 537 U.S. at 337.  Courts should not issue a COA as a matter of course. *Id.*

In this case, the Court has determined that each of Petitioner's claims is either procedurally barred or clearly without merit.  Because an appeal by Petitioner on any of the issues raised in his petition would not merit further attention, the Court will deny a COA.  Petitioner may, however, seek a COA directly from the Sixth Circuit Court of Appeals. Rule 11(a), Rules Gov'g § 2254 Cases.

An appropriate Order is filed herewith.

_____
Todd Campbell
United States District Judge